NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0222n.06

No. 18-3567

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MIZANUR RAHMAN SIKDER, | ) | **FILED** |
| | ) | Apr 29, 2019 |
| Petitioner, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| WILLIAM P. BARR, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | |

BEFORE:     SUHRHEINRICH, THAPAR, and LARSEN, Circuit Judges.

SUHRHEINRICH, Circuit Judge.   Mizanur Rahman Sikder is a native and citizen of Bangladesh.  He came to the United States as a temporary worker in November 1991 and became a conditional permanent resident in August 2008 after his marriage to a United States citizen.  An Immigration Judge ("IJ") ordered him to be removed from the country because the marriage was a sham.  The Board of Immigration Appeals adopted the IJ's decision and dismissed Sikder's appeal.  We **DENY** Sikder's petition for review of those decisions.

**I.**

Sikder and Mokhlesina Lebu ("Ms. Lebu"), a United States citizen, were married from May 14, 2007 to February 23, 2010.  Based on their marriage, Sikder received conditional permanent resident status in August 2008.  However, in October 2009, Ms. Lebu reported Sikder to Citizenship & Immigration Officer Stephen Lewis after she became suspicious that her marriage was a sham.

Ms. Lebu explained to Officer Lewis that she first contacted Sikder after seeing an ad in a Bengali newspaper about a man looking for a wife. They began their relationship over the phone while Ms. Lebu lived in Michigan and Sikder lived in New York. They were married in Michigan, but Sikder stayed with Ms. Lebu for only two or three days after their wedding, and then returned to New York while Ms. Lebu remained in Michigan. Sikder would return every month or so and stay for two or three days at a time. Ms. Lebu's suspicions arose in April 2009 when Sikder failed to come home to take care of her after she suffered injuries in a car accident that required her to be bedridden for four months. She traced his phone number to an address on Elmhurst Avenue in New York, different than the address he had given her. She sent a friend to New York to investigate, and the friend reported that Sikder was living in an apartment at the Elmhurst Avenue address with another woman. Ms. Lebu believed Sikder was living with Rafeza Parveen, his ex-wife from Bangladesh. She was right.

Officer Lewis ordered CIS officials in New York to conduct a site visit to the Elmhurst Avenue apartment, where they found Parveen living with her son, Ziaur Rahman. Rahman told the United States Citizenship and Immigration Services ("USCIS") officials that Sikder was his father, and there was a framed picture of Sikder on the wall. A worker in the management office and the building superintendent both confirmed that Sikder was living with Parveen and Rahman.

Four-and-a-half months after Ms. Lebu's report to Officer Lewis, she and Sikder were divorced. Despite the divorce, Sikder filed a Form I-751 petition to remove the conditions on his residence. The government detected many problems in Sikder's I-751 petition, including inconsistent dates regarding his prior marriage to Rafeza Parveen; inconsistent stories about the paternity of Parveen's son, Ziaur Rahman; and evidence that Sikder was still living with Parveen

in New York while married to Ms. Lebu. Therefore, the government found that Sikder had married Ms. Lebu solely for immigration benefits and denied his I-751 petition.

The government classified Sikder as removable on two grounds: (1) under 8 U.S.C. § 1227(a)(1)(D)(i), because his conditional permanent resident status had been terminated, and (2) under 8 U.S.C. § 1227(a)(1)(G)(i), because he procured his conditional permanent resident status through marriage fraud. Sikder eventually appeared before an IJ, where he requested a second review of his I-751 petition, a fraud waiver under 8 U.S.C. § 1227(a)(1)(H), and, in the alternative, cancellation of removal under 8 U.S.C. § 1229b(1) based on his new marriage to Polly Gosh.[1] All of his requested relief turned on whether his marriage to Ms. Lebu was a sham. The IJ heard testimony from four people—Ms. Lebu, Sikder, Officer Lewis, and Ratan Barua (a family friend). The IJ also considered extensive documentary evidence.

The IJ found Ms. Lebu to be a credible witness. Her testimony mirrored the statement she gave to Officer Lewis in October 2009. Ms. Lebu testified that, although she initially believed her marriage to Sikder to be legitimate, Sikder's behavior changed her mind. For example, Ms. Lebu testified that Sikder spent less than fifty days total with her over the three years they were married, with the bulk of that time coming during Sikder's green card interview. Sikder gave Ms. Lebu a fake home address in New York and never provided Ms. Lebu with financial support. He did not visit Ms. Lebu until three months after her injury, and that was only to pick up his green card. And when Sikder got word that Ms. Lebu was going to report him to immigration officials, he threatened to post a naked picture of Ms. Lebu online.

In contrast, the IJ determined that Sikder was not a credible witness. The IJ found that Sikder "was evasive throughout his testimony, even in response to the most basic of questions."

---

[1] Eight months after his divorce from Ms. Lebu, Sikder married Polly Gosh in New York.

The IJ also found certain aspects of Sikder's story to be embellished and implausible. For example, Sikder testified that he lived in New York because he could not find work in Michigan. Sikder also testified that Ms. Lebu was angry with him after her accident and demanded that he buy her a car and a house. Sikder testified that when he could not, Ms. Lebu kicked him, even though she was on bed rest at the time.

The IJ also found that Sikder gave false testimony because his story was inconsistent with testimony from other witnesses and the documents Sikder submitted in various applications. His marriage to Parveen, for example: Sikder testified that he and Parveen were married in Bangladesh in 1988, and that Parveen filed for divorce. Sikder testified that he and Parveen were officially divorced on November 19, 1996, but he did not know about the divorce (even though he was living with Parveen) until he received the divorce documents in 1998. Sikder's divorce decree from Bangladesh told a different story. It states that Sikder married Parveen in 1980, that Sikder initiated the divorce, and that he was present for the divorce proceedings. The IJ cited another example: Sikder's residence at Elmhurst Avenue. Sikder testified that he lived with Parveen at the Elmhurst Avenue apartment until 1998 but returned periodically thereafter to pick up his mail. However, his application to adjust status states that he lived at Elmhurst Avenue until 2007, and two building employees told immigration officials that Sikder still lived in the building as of 2009. A third example: Sikder's paternity. Sikder testified that Ziaur Rahman is his stepson, yet listed him as his son on his application to be a conditional permanent resident. This also contradicted Rahman's statement to immigration officials that Sikder was his father.

The remaining testimony was brief. Officer Lewis testified only to corroborate Ms. Lebu's story about her report in October 2009. Barua testified about his relationship with Ms. Lebu and

Sikder. The IJ found Barua to be credible, but that his testimony was of limited probative value because it was speculative as he did not interact often with the couple.

After reviewing the testimony and evidence, the IJ stated that it was likely Sikder was still living with Parveen while he was married to Ms. Lebu and determined that Sikder did not enter his marriage with Ms. Lebu in good faith. Accordingly, the IJ sustained the denial of Sikder's I- 751 petition and the charges of removability. The IJ declined to reach the issue of marriage fraud waiver, but explained that even if the IJ could waive marriage fraud, she would not because Sikder lied under oath and threatened to blackmail Ms. Lebu. Finally, the IJ pretermitted Sikder's application for cancellation of removal because he gave false testimony and therefore could not prove he was a person of good moral character.

The Board adopted and affirmed the IJ's decision in full. Upholding the adverse credibility finding as to Sikder, the Board cited the implausibility in Sikder's testimony that he could not find work in Michigan and in his testimony that Ms. Lebu kicked him while she was on bedrest following her accident in April 2009. The Board also referenced the inconsistencies between Sikder's testimony, his divorce documents with Parveen, and his immigration applications. Finally, the Board found that Sikder failed to explain why three different people identified him as living with Parveen in New York while he was married to Ms. Lebu.

## II.

Sikder petitions for review of the IJ's decision, which the BIA adopted. "When the BIA adopts the IJ's reasoning and supplements the IJ's opinion, that opinion, as supplemented by the BIA, becomes the basis for review." *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014) (quoting *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009)). Thus, we review the IJ's decision directly and consider any additional comments from the BIA. *Id.*

### A.    Adverse Credibility Determination

Sikder bears the burden to prove he should not be removed.  8 U.S.C. § 1229a(c)(4).  The IJ's adverse credibility determination is his primary obstacle because "[a]n adverse credibility determination is fatal to claims for . . . relief from removal, preventing such claims from being considered on their merits."  *Slyusar*, 740 F.3d at 1072 (citation omitted).  When assessing the credibility of a witness, an IJ may consider the witness's "demeanor, candor, or responsiveness," the plausibility and consistency of the witness's story both internally and when compared with other evidence, and any inaccuracies or falsehoods, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim."  § 1229a(c)(4)(C).  We review credibility determinations under the substantial evidence standard and will uphold the determination "as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 293–94 (6th Cir. 2016) (quoting *Parlak v. Holder*, 578 F.3d 457, 462 (6th Cir. 2009)).

Sikder challenges the adverse credibility finding, making four arguments.  First, he asserts that the IJ's finding that Sikder did not provide an explanation as to why he could not find work in Michigan has no support in the record.  Second, he claims that we should discount Ms. Lebu's testimony because it was contradicted by Barua.  Without Ms. Lebu's testimony, Sikder claims that his "factual testimony holds together as consistent, cogent, and detailed."  Third, he contends that the inconsistencies in his marriage documents from Bangladesh are very common.  Finally, he insists the USCIS investigation into his New York residence was not credible because it yielded different explanations from different people.

*Plausibility of Work in Michigan.*  Sikder disputes the IJ's conclusion that it was implausible that he could not find work in Michigan.  The IJ found that Sikder supported his

assertion "only by repeatedly stating that the economy in Michigan was bad." Sikder testified that he lived with Ms. Lebu in Detroit from July to November 2007. During that time, Sikder says he worked as a cashier at a neighborhood store until he was laid off. Sikder testified that he could not find another job and that Ms. Lebu told him to move back to New York to drive a taxi. In contrast, Ms. Lebu testified that there were enough jobs in Michigan for Sikder. She also testified that Sikder lived with her for fewer than 50 days total during their marriage. These stories are inconsistent. Sikder either lived in Michigan for five months or for fewer than 50 days. He either had access to a job or he did not. The IJ picked Ms. Lebu's story, and substantial evidence supports her decision.

*Ms. Lebu's Testimony*. Sikder asks us to outright ignore Ms. Lebu's testimony because without it, "[his] factual testimony holds together as consistent, cogent, and detailed." We cannot do that because we are charged with reviewing the record as a whole. *Bi Qing Zheng*, 819 F.3d at 293–94. Nor will we discount the IJ's finding that Ms. Lebu was a credible witness. According to the IJ, she was candid with her answers and testified based on first-hand knowledge. Her testimony was consistent with the statement she gave to Officer Lewis in October 2009. Sikder suggests Ms. Lebu was not credible because Barua contradicted her testimony, but the IJ explained that Barua's testimony was mostly speculative and therefore of limited probative value. Nothing in the record suggests we should disturb that conclusion.

*Inconsistencies in Marriage Documents and USCIS Investigation.* Sikder next asserts that various inconsistencies between his testimony and other evidence are of little importance. For example, Sikder claims the divorce decree lists the wrong date because "these types of mistakes [are] very common in Bangladesh." And he claims that the USCIS investigation at the Elmhurst Avenue apartment led to different explanations from different people, so it cannot be reliable.

Therefore, according to Sikder, the IJ erred by relying on this evidence. We disagree. Not only is the IJ allowed to consider "any inaccuracies or falsehoods in [an applicant's] statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim," *Slyusar*, 740 F.3d at 1072 (alteration in original) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)), these inconsistencies—directly concerning whether Sikder lied about his marriage to Parveen— bear a direct relation to the marriage fraud question in this case.

Indeed, our review of Sikder's testimony and record evidence amply supports the IJ's findings that Sikder was evasive and inconsistent throughout his entire testimony. In short, substantial evidence supports the IJ's adverse credibility determination.

**B.      Denial of I-751 Waiver Petition and Application for Cancellation of Removal**

With the adverse credibility determination intact, we can quickly dispense with two of Sikder's other requests for relief. To succeed on his I-751 waiver petition, Sikder had to prove that he entered his marriage to Ms. Lebu in good faith. 8 U.S.C. § 1186a(c)(4)(B). As explained above, substantial evidence supports the IJ's determination that Sikder did not. Therefore, the IJ and the Board correctly sustained the denial of Sikder's I-751 petition.

Next, Sikder's request for cancellation of removal requires, among other things, that he "has been a person of good moral character" during the last ten years. 8 U.S.C. § 1229b(b)(1)(B). Sikder committed marriage fraud by living with his ex-wife while he was married to Ms. Lebu and then lied about it under oath to immigration officials and the IJ. Consequently, he cannot demonstrate good moral character. *See* 8 U.S.C. § 1101(f)(6) ("No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established is, or was . . . one who has given false testimony for the

purpose of obtaining any benefits under this chapter[.]"). The IJ properly pretermitted Sikder's application for cancellation of removal.

## C.    Denial of Marriage Fraud Waiver

Finally, Sikder seeks relief under 8 U.S.C. § 1227(a)(1)(H), which grants the Attorney General discretion to waive removability where an alien gains an immigrant visa as a direct result of fraud or misrepresentation. The IJ and the Board assumed without deciding that the Attorney General could waive removal for those who commit marriage fraud, but ultimately determined that Sikder did not deserve the waiver. That determination is discretionary and beyond the scope of our jurisdiction. 8 U.S.C. § 1252(a)(2)(B)(ii) (stating "no court shall have jurisdiction to review . . . any . . . decision or action . . . to be in the discretion of the Attorney General"); *cf. Al-Saka v. Sessions*, 904 F.3d 427, 431–32 (6th Cir. 2018) (explaining that we could review only "constitutional claims or questions of law," such as whether the Attorney General even has the authority to grant a waiver for marriage fraud under § 1227(a)(1)(H)).

* * *

For the foregoing reasons, we **DENY** the petition for review.